**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW RIVINGTON PROPERTIES LLC, and RIVINGTON HOUSE-THE NICHOLAS A. RANGO HEALTH CARE FACILITY d/b/a MANHATTAN CENTER FOR NURSING AND REHABILITATION; and ALPHA REHABILITATION SERVICE LLC, ALLURE REHABILITATION SERVICES LLC, and ALLURE CARE MANAGEMENT LLC DBA THE ALLURE GROUP; and JOEL LANDAU, SOLOMON RUBIN and MARVIN RUBIN,<br><br>Plaintiffs,<br><br>-against -<br><br>EXECUTIVE RISK INDEMNITY INC. and CHUBB<br><br>Defendants. | Docket No. 1:19-cv-00362-ARR-VMS<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs, NEW RIVINGTON PROPERTIES LLC, and RIVINGTON HOUSE-THE NICHOLAS A. RANGO HEALTH CARE FACILITY d/b/a MANHATTAN CENTER FOR NURSING AND REHABILITATION ( this group of Plaintiffs collectively referred to herein as RIVINGTON); and Plaintiffs ALPHA REHABILITATION SERVICE LLC, ALLURE REHABILITATION SERVICES LLC and ALLURE GROUP MANAGEMENT LLC DBA THE ALLURE GROUP (this group of Plaintiffs collectively referred to herein as ALPHA/ALLURE); and JOEL LANDAU, SOLOMON RUBIN, and MARVIN RUBIN (this group of Plaintiffs collectively referred to herein as INSURED EXECUTIVES) by their attorneys, MARGULIES and ASSOCIATES PLLC, set forth the following as and for their First Amended Complaint against Defendants, and allege as follows:

1

## **THE PARTIES and DIVERSITY JURISDICTION**

1. At all times hereinafter mentioned, Plaintiff NEW RIVINGTON PROPERTIES LLC was and still is a domestic limited liability company, and Plaintiff RIVINGTON HOUSE-THE NICHOLAS A. RANGO HEALTH CARE FACILITY d/b/a MANHATTAN CENTER FOR NURSING AND REHABILITATION was and still is a domestic not for profit corporation, both doing business and having offices at the time of this Complaint in the County of Kings, City and State of New York (these Plaintiffs sometimes collectively referred to herein as RIVINGTON).

2. At all times hereinafter mentioned, Plaintiffs ALPHA REHABILITATION SERVICE LLC, ALLURE REHABILITATION SERVICES LLC and ALLURE GROUP MANAGEMENT LLC DBA THE ALLURE GROUP were and still are domestic limited liability companies, both doing business and having offices at the time of this Complaint in the County of Kings, City and State of New York (these Plaintiffs sometimes collectively referred to herein as ALPHA/ALLURE).

3. At all times hereinafter mentions, Plaintiffs JOEL LANDAU, SOLOMON RUBIN and MARVIN RUBIN are individuals, each residing in the State of New York (these Plaintiffs sometimes referred to herein as INSURED EXECUTIVES).

4. At all times hereinafter mentioned, Defendant EXECUTIVE RISK INDEMNITY INC. (EXECUTIVE) was and still is a non-domestic insurance company, with main offices at 15 Mountain View Road, Warren, New Jersey, and incorporated in the State of Delaware.

5. At all times herein mentioned, Defendant EXECUTIVE was and still is a member of the CHUBB Group of Insurance Companies, and for purposes herein, the defendants are

sometimes collectively referred to herein as CHUBB.

6. At all times hereinafter mentioned, CHUBB has its insurance headquarters at 15 Mountain View Road, Warren, New Jersey, and is incorporated in Zurich, Switzerland.

7. This Court has subject matter jurisdiction under 28 U.S.C. 1332, since the parties hereto are citizens of two separate states, Plaintiffs are incorporated and doing business in New York State, and are residents of New York State, and defendant EXECUTIVE has a main office in New Jersey and is incorporated in the state of Delaware, and defendant CHUBB has a main office in New Jersey and is incorporated in Zurich, Switzerland, and therefore there is complete diversity of the parties. In addition, the controversy herein exceeds $75,000.

## THE RIVINGTON INSURANCE POLICY

8. CHUBB issued a Power Source insurance policy insuring RIVINGTON, under Policy number 8242-6387, for the period April 14, 2015 to April 14, 2016, with an Extended Reporting Period to April 14, 2017 (The Rivington Policy). The Rivington Policy provided, *inter alia,* Directors & Officers Liability and Entity Liability coverage (Rivington D & O Coverage) with an aggregate limit of liability of $1,000,000.00, with defense costs and expenses being a part of, and not in addition to, the limit of The Rivington Policy (Rivington Defense Costs).

9. The Rivington Policy contains an Endorsement/Rider No. 3, which amends The Rivington Policy to provide that Rivington D & O Coverage contains a limit of liability for Claims for Regulatory Wrongful Act of $1,000,000.00 and the Claims for Regulatory Wrongful Acts are subject to a deductible amount of $1,000,000 pursuant to

Endorsement/Rider 3 (2)(j)(C). To the extent that any covered loss resulting from a claim for Regulatory Wrongful Act is in excess of the applicable deductible amount, the Insured shall bear uninsured and at their own risk 50% and the Insurer's liability shall apply only to the remaining percentage of such Loss, pursuant to Endorsement/Rider 3 (2)(j)(B).

10. The Rivington Policy defines Regulatory Wrongful Act, as "any actual or alleged violation by an Insured of the responsibilities, obligations or duties imposed by the Federal False Claims Act, or any similar federal, state or local statutory law or common law anywhere in the world, any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law anywhere in the world, or amendments to or regulations promulgated under any such law."

11. Endorsement/Rider 3 (2)(j)(F)(1) provides that with respect to any Claim for Regulatory Wrongful Act, "It shall be the duty of the Insured and not the duty of the Company (Insurer) to defend Claims made against the Insured."

12. Endorsement/Rider 3 (2)(j)(F)(3) provides that with respect to any Claim for Regulatory Wrongful Act, "The Insured agrees not to settle or offer to settle any Claim, incur any Defense Costs……without the Company's prior written consent. The Company shall not be liable for any settlements made, for any element of Loss incurred, for any obligation assumed….without the Company's prior written consent. Provided the Insureds comply with Subparagraphs (4) and (5) below, the Company shall not unreasonably withhold any such consent."

13. Subparagraphs (4) is contained in Endorsement/Rider 3 (2)(j)(F)(4) as follows: "With respect to any Claim that appears reasonably likely to be covered in whole or in part

4

under this coverage section, the Company shall have the right and shall be given the opportunity to effectively associate with the Insureds, and shall be consulted in advance by the Insureds, regarding the investigation, defense and settlement of such Claim, including but not limited to selecting appropriate defense counsel and negotiating any settlement."

14. Subparagraph (5) is contained in Endorsement/Rider 3 (2)(j)(F)(5) as follows: "The Insureds agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree that in the event of a Claim the Insureds will do nothing that could prejudice the Company's position or its potential or actual rights of recovery."

## THE ALPHA/ALLURE INSURANCE POLICY

15. CHUBB issued a Power Source insurance policy insuring ALPHA/ALLURE, (as defined above, including the entities: ALLURE REHABILITATION SERVICES LLC, ALLURE CARE MANAGEMENT LLC DBA THE ALLURE GROUP, ALLURE REHABILITATION, ALLURE CARE MANAGEMENT LLC, and ALPHA REHABILITATION SERVICE LLC) under Policy number 8241-8445, for the period December 10, 2015 to December 10, 2016 (The Alpha/Allure Policy).

16. The Alpha/Allure Policy defines **Insured** as "the **Insured Organization** and any **Insured Person**."

17. The Alpha/Allure Policy defines **Insured Person** as "any past, present or future **Executive** or **Employee** of the **Insured Organization**."

18. The Alpha/Allure Policy defines **Executive** as "any natural person specified below:

5

(1) Duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America; ...."

19. The Alpha/Allure Policy provided, *inter alia,* Directors & Officers Liability and Entity Liability coverage (Alpha/Allure D & O Coverage) with a Combined Maximum Aggregate limit of liability of $1,000,000.00, for all claims in Item 3 of the Declarations, and specifically a Limit of Liability of $1,000,000.00 for Directors and Officers Liability Coverage Section Maximum Aggregate Limit of Liability, with defense costs and expenses being a part of, and not in addition to, the limit of The Policy (Alpha/Allure Defense Costs).

20. The Alpha/Allure Policy insures ALPHA/ALLURE for Loss resulting from Directors and Officers Claims first made against ALPHA/ALLURE for Wrongful Acts and for Insured Organization Claims first made against ALPHA/ALLURE for Wrongful Acts.

21. The Alpha/Allure Policy, and specifically the Alpha/Allure D & O Coverage, contains Section VI "ADDITIONAL LIMIT OF LIABILITY FOR DEFENSE COSTS ONLY" (OPTIONAL), which states that:

"Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability For Defense Costs Only, if purchased as set forth in Item 5(c) of the Declarations, will be an additional limit of liability in an amount not to exceed the lesser of twenty-five percent(25%) of the maximum aggregate Limit of Liability set forth in Item 4(a) of the Declarations Coverage Section or one million dollars ($1,000,000), which amount is in addition to and not part of such maximum aggregate Limit of Liability. The payment by the **Company** of such Defense Costs Only shall erode:

(A) First, the Additional Limit of Liability For Defense Costs Only, then
(B) The applicable maximum aggregate Limit of Liability set forth in Item 4(a) of the Declarations, up to twenty-five percent (25%) of such Limit of Liability.

22. The Alpha/Allure Policy, in Item 5 (c) of Declarations, provides that Directors and

6

Officers Coverage, Section VI, Additional Limit of Liability for "Defense Costs Only" Is available under this Policy with a Limit of Liability of $1,000,000.00.

23. The Alpha/Allure Policy, and specifically the Alpha/Allure D & O Coverage, contains Section IV "ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES" (OPTIONAL), which states that:

"A. Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 5 (b) of the Declarations, will be an additional Limit of Liability in the amount set forth in Item 5 (b) of the Declarations, which amount is in addition to and not part of the applicable Limit of Liability as set forth in Item 4 of the Declarations.

B. This Additional Limit of Liability Dedicated for Executives is available solely for **Loss** resulting from any **D & O Claim** against any **Executive** covered under Insuring Clause (A) of this Coverage Section.

C. The Additional Limit of Liability Dedicated for Executives shall be excess of any valid and collectible insurance available that is specifically excess to this Policy and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the **Company** shall have any obligation to make any payment on account of the Additional Limit of Liability Dedicated for Executives."

24. The Alpha/Allure Policy, in Item 5 (b) of Declarations, provides that Directors and Officers Coverage, Section IV, Additional Limit of Liability Dedicated for Executives Is available under this Policy with a Limit of Liability of $1,000,000.00.

25. Plaintiffs Joel Landau, Solomon Rubin and Marvin Rubin are Executives of ALPHA/ALLURE and are EXECUTIVES under and within The Alpha/Allure Policy, as defined therein.

## THE UNDERLYING CLAIM AGAINST RIVINGTON

26. In or about March and April 2016, and for a period of time around these dates, RIVINGTON, and several individuals who were members, officers and directors of

RIVINGTON, including Joel Landau, Stephanie Rodriguez, Tzvi Licht, Yshaya Altman, and Aron Porges, were served with various Subpoenas, from the State of New York office of the Attorney General Medicaid Fraud Control Unit (The Rivington Subpoenas).

27. The Subpoenas, and the matters which were under investigation against RIVINGTON, underlying the Subpoenas, were each a covered Claim under the Regulatory Wrongful Act section of The Policy (The Rivington Claim).

28. RIVINGTON required immediate and continuing legal services to represent it, in connection with the defense of the investigations underlying The Rivington Subpoenas and The Rivington Claim.

29. Beginning in or about April 2016, and continuing thereafter on a regular basis for over one year, RIVINGTON retained and paid two law firms, Dechert and Brune Law, to represent it, and its members, officers and directors, in connection with The Rivingotn Claim (Paid Rivington Defense Costs).

30. In or about early July 2016, RIVINGTON gave notice to CHUBB about The Rivington Subpoenas and the underlying investigation (Notice of The Rivington Claim).

31. On or about July 6, 2016, CHUBB gave written acknowledgment of receipt of the Notice of The Rivington Claim, and of documents underlying The Rivington Claim (The Initial Chubb Letter).

32. Following The Initial Chubb Letter, Chubb had subsequent telephone and written correspondence with RIVINGTON and/or RIVINGTON attorney(s) and/or RIVINGTON insurance broker(s).

33. Such subsequent additional written correspondences from Chubb to RIVINGTON and RIVINGTON attorneys and insurance brokers include, and may not be limited to, a letter

8

dated May 8, 2017, an email dated August 17, 2017, an email dated September 29, 2017, an email dated October 2, 2017, an email dated May 30, 2018, an email dated May 31, 2018, an email dated June 5, 2018, a letter dated July 9, 2018, and two emails dated July 9, 2018.

34. Following The Initial Chubb Letter, CHUBB agreed that certain defense costs incurred by RIVINGTON, are covered under The Rivington Policy.

35. At some point following The Initial Chubb Letter, CHUBB consented to RIVINGTON's retention and use of the Dechert and Brune Law firms' services to defend RIVINGTON and its members, officers and directors regarding The Rivington Claim.

36. At all times referenced herein, RIVINGTON agreed to provide, and did provide CHUBB with all information, assistance and cooperation which the CHUBB may reasonably have required, and RIVINGTON did nothing that could prejudice the CHUBB's position or its potential or actual rights of recovery.

37. At all times referenced herein, CHUBB did have the right and was given the opportunity to effectively associate with RIVINGTON, and was consulted in advance by RIVINGTON, regarding the investigation, defense and settlement of The Rivington Claim, including but not limited to selecting appropriate defense counsel and negotiating any settlement.

38. At some point, CHUBB decided that it would cover, pay, reimburse and/or apply towards the deductible certain Defense Costs paid by RIVINGTON, to Dechert and Brune Law, which, CHUBB decided, were defense costs for services rendered after its receipt of the Notice of The Rivington Claim (The Post July 6 2016 Defense Costs).

39. At some point, CHUBB decided that it would not cover, pay, reimburse, and/or apply

towards the deductible certain Defense Costs paid by RIVINGTON, to Dechert and Brune Law, which, CHUBB decided, were defense costs for services rendered before its receipt of the Notice of The Rivington Claim (The Pre July 6 2016 Defense Costs).

40. The Post July 6 2016 Defense Costs, as of the date of this Complaint, total approximately $681,813.24, which amount is to be applied towards the $1 million retention under The Rivington Policy, leaving an approximate amount left of the retention to be approximately $318,186.76 (the Unused Retention Amount)

41. The Pre July 6, 2016 Defense Costs, as of the date of this Complaint, include Dechert Invoice No.: 1291280 in the sum of at least $402,548.99; Dechert Invoice No. 1298059 in the sum of at least $354,528.37; Dechert Invoice No. 1293972 in the sum of at least $254,800.18; Brune Invoice No. 119 in the sum of at least $111,392.54; Brune Invoice No. 99 in the sum of at least $137,646.04; and Brune Invoice No. 66 in the sum of at least $36,388.50 all of which invoices total an approximate sum of at least $1,297,304.64.

42. The Pre July 6 2016 Defense Costs, less the Unused Retention Amount, totals approximately at least $979,117.88.

43. Pursuant to The Rivington Policy, CHUBB's responsibility and liability to pay RIVINGTON is approximately at least $489,558.94, which is 50% of the difference between the Pre July 6 2016 Defense Costs and the Unused Retention Amount, subject to a $1 million limit.

44. RIVINGTON has made demand for CHUBB to cover, pay, reimburse, and/or apply towards the deductible all defense costs, including The Pre July 6, 2016 Defense Costs, and The Post July 6, 2016 Defense Costs.

45. Notwithstanding the demand, CHUBB has refused to cover, pay, reimburse and/or apply

towards the deductible the Pre July 6, 2016 Defense Costs, claiming that "Chubb will not reimburse, in whole or in part, for services rendered prior to notice to Chubb."

### THE UNDERLYING CLAIM AGAINST ALPHA/ALLURE and THE ALPHA/ALLURE EXECUTIVES

46. In or about April 2016, and for a period of time prior and subsequent thereto, The State of New York, Office of Attorney General, Medicaid Fraud Control Unit issued one, or more than one, Subpoena Duces Tecum to ALPHA/ALLURE (The Alpha/Allure Subpoenas) and upon some of its duly elected or appointed directors, officers members of the Board of Managers, or management committee members of ALPHA/ALLURE, including but not limited to Joel Landau, Marvin Rubin and Solomon Rubin (The Alpha/Allure Executives).

47. The Alpha/Allure Subpoenas, and the matter which were under investigation against ALPHA/ALLURE and against The Alpha/Allure Executives dealt, in whole or in part, with the actual or proposed transaction for the purchase and sale of real property located at 270 Nostrand Avenue, Brooklyn, New York, and with the purchase and operations of CABS Nursing Home and the Nostrand Center for Nursing and Rehabilitation facility, located at 270 Nostrand Avenue, Brooklyn, New York, and for other matters or purposes covered under The Allure/Alpha Policy.

48. The Alpha/Allure Subpoenas, and the matters which were under investigation against ALPHA/ALLURE and against The Alpha/Allure Executives, underlying The Alpha/Allure Subpoenas, were each a covered Claim under The Alpha/Allure Policy and the Regulatory Wrongful Act section of The Alpha/Allure Policy (The Alpha/Allure

11

Claim).

49. ALPHA/ALLURE and The Alpha/Allure Executives required immediate and continuing legal services to represent it/them, in connection with the defense of the investigations underlying The Alpha/Allure Subpoenas and The Alpha/Allure Claim.

50. Beginning in or about April 2016, and continuing thereafter on a regular basis for over one year, ALPHA/ALLURE and The Alpha/Allure Executives retained and paid a law firm, Dechert, to represent it/them, and its Executives, members, officers and directors, in connection with The Alpha/Allure Claim (Paid Alpha/Allure Defense Costs).

51. In or about early July 2016, or at a time prior or subsequent thereto, ALPHA/ALLURE and The Alpha/Allure Executives gave notice to CHUBB about The Alpha/Allure Subpoenas and the underlying investigation (Notice of The Alpha/Allure Claim).

52. Shortly after the Notice of The Alpha/Allure Claim, CHUBB gave written acknowledgment of receipt of the Notice of The Alpha/Allure Claim.

53. In or about December 2016, ALPHA/ALLURE and The Alpha/Allure Executives were served with a Summons and Complaint in an action entitled CABS NURSING HOME COMPANY, INC., Plaintiff, vs NNRC LLC, NNRC PROPERTIES LLC, 270 NOSTRAND LENDER, LLC, THE ALLURE GROUP, INC., JOEL LANDAU, MARVIN RUBIN, and SOLOMON RUBIN, Defendants, commenced in Supreme Court of the State of New York, County of Kings, Index No. 522385/2016 wherein certain wrongful acts were claimed against ALPHA/ALLURE and The Alpha/Allure Executives (The Brooklyn Lawsuit).

54. In or about December 2016, ALPHA/ALLURE and The Alpha/Allure Executives were served with a Summons and Complaint in an action entitled 270 NOSTRAND LENDER

LLC, Plaintiff vs NNRC PROPERTIES LLC, JOEL LANDAU, SOLOMON RUBIN and MARVIN RUBIN, Defendants, commenced in Supreme Court of The State of New York, County of New York, Index No. 656492/2016 wherein certain wrongful acts were claimed against ALPHA/ALLURE and The Alpha/Allure Executives (The Manhattan Lawsuit).

55. The Brooklyn Lawsuit and The Manhattan Lawsuit were each a covered Claim under The Alpha/Allure Policy and the Regulatory Wrongful Act section of The Alpha/Allure Policy (The Alpha/Allure Claim).

56. ALPHA/ALLURE and The Alpha/Allure Executives required immediate and continuing legal services to represent it/them, in connection with the defense of The Brooklyn Lawsuit and The Manhattan Lawsuit.

57. Beginning in or about April 2016, and continuing thereafter on a regular basis for over one year, ALPHA/ALLURE and The Alpha/Allure Executives retained and paid a law firm, Dechert, to represent it/them, and its Executives, members, officers and directors, in connection with The Brooklyn Lawsuit and The Manhattan Lawsuit, which defense costs were additional Alpha/Allure Defense Costs).

58. In or about November 2017, ALPHA/ALLURE and The Alpha/Allure Executives entered into an Assurance of Discontinuance agreement with The Attorney General of the State of New York and The New York State Department of Health, which provided for various terms and conditions, including payments of $1,250,000 to one or more than one charitable organizations, $400,000 for a Not for Profit Law assessment under section 715(f) of Not For Profit Law, and $350,000 to the NYS Attorney General for reimbursement of costs of investigation incurred by NYS Attorney General.

59. In addition, The Brooklyn Lawsuit and The Manhattan Lawsuit have caused ALPHA/ALLURE and The Alpha/Allure Executives to have both defense costs, and certain indemnity and settlement costs, including at least approximately Twenty Million ($20,000,000.00) Dollars paid to settle the Manhattan Lawsuit.

60. All of the payments as aforesaid, for defense and indemnity or settlement, including the costs related to the Assurance of Discontinuance Agreement and the settlement of the Manhattan Lawsuit (The Alpha/Allure Costs), are a Loss, as that term is defined in The Alpha/Allure Policy including The Directors & Officers Liability Coverage Section.

61. All of The Alpha/Allure Costs are to be reimbursed and paid to ALPHA/ALLURE and to The Alpha/Allure Executives pursuant to the terms and conditions of The Alpha/Allure Policy, including the ADDITIONAL LIMIT OF LIABILITY FOR DEFENSE COSTS ONLY(up to at least the sum of $250,000) and ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (up to at least the sum of $1,000,000), and up to the maximum amount allowable under The Alpha/Allure Policy, as may be determined in this case.

62. Notwithstanding the foregoing, Defendants have paid only the sum of $1,000,000, and refuse to pay any further monies to ALPHA/ALLURE.

### AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT UNDER THE RIVINGTON POLICY

63. Plaintiffs repeat and re-allege all assertions and allegations noted in Paragraphs "1" through "61" herein, with the full force and effect as if fully set forth herein.

64. CHUBB's refusal to cover, pay, reimburse and/or apply towards the deductible The Pre

July 6 2016 Defense Costs is a breach of The Rivington Policy and a breach of contract.

65. Plaintiffs have fully performed under The Rivington Policy.

66. Accordingly, CHUBB has caused damages to RIVINGTON, and is fully liable and responsible to cover, pay, reimburse, and/or apply towards the deductible all of The Pre July 6 2016 Defense Costs, which should result in payment from CHUBB to RIVINGTON in the sum of at least approximately $489,558.94, together with interests, costs, and expenses, plus the costs of prosecuting this action, and all other damages as allowed under New York law.

### AS AND FOR A SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT UNDER THE RIVINGTON POLICY

67. Plaintiffs repeat and re-allege all assertions and allegations noted in Paragraphs "1" through "65" herein, with the full force and effect as if fully set forth herein.

68. Plaintiff is entitled to a Declaratory Judgment that CHUBB has breached its contractual duties and obligations, including those regarding providing for and paying defense costs, and for an Order compelling CHUBB to cover, pay, reimburse, and/or apply towards the deductible all of The Pre July 6 2016 Defense Costs, and for CHUBB to pay the costs incurred by RIVINGTON in prosecuting this instant action, and for such other and further relief as may be allowed under New York law.

69. Accordingly, CHUBB is fully liable and responsible to cover, pay, reimburse, and/or apply towards the deductible all of The Pre July 6 2016 Defense Costs, which should result in payment from CHUBB to RIVINGTON in the sum of at least approximately $489,558.94, together with interests, costs, and expenses, plus the costs of prosecuting this action, and all other damages as allowed under New York law.

### AS AND FOR A THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT UNDER THE ALPHA/ALLURE POLICY

70. Plaintiffs repeat and re-allege all assertions and allegations noted in Paragraphs "1" through "68" herein, with the full force and effect as if fully set forth herein.

71. CHUBB's refusal to pay and reimburse ALPHA/ALLURE the amounts it owes, as set forth above, including the ADDITIONAL LIMIT OF LIABILITY FOR DEFENSE COSTS ONLY (up to at least the sum of $250,000) and ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (up to at least the sum of $1,000,000), and up to a maximum amount allowable under The Alpha/Allure Policy as may be determined in this case, is a breach of The Alpha/Allure Policy, and a breach of contract.

72. Plaintiffs have fully performed under The Alpha/Allure Policy.

73. Accordingly, CHUBB has caused damages to ALPHA/ALLURE, and is fully liable and responsible to pay and reimburse to ALPHA/ALLURE all the moneys ALPHA/ALLURE have paid, and are or will be obligated to pay, in excess of $1,000,000 already paid by CHUBB, including all ALPHA/ALLURE defense costs and other settlement, indemnity, discontinuance, and all other costs referred to above, up to the maximum amount due under The Alpha/Allure Policy, in a sum to be determined by this court, but in excess of $75,000, together with interests, costs, and expenses, plus the costs of prosecuting this action, and all other damages as allowed under New York law.

### AS AND FOR A FOURTH CAUSE FOR ACTION IN DECLARATORY JUDGMENT UNDER THE ALPHA/ALLURE POLICY

74. Plaintiffs repeat and re-allege all assertions and allegations noted in Paragraphs "1" through "72" herein, with the full force and effect as if fully set forth herein.

75. The Alpha/Allure Plaintiffs is/are entitled to a Declaratory Judgment that CHUBB has breached its contractual duties and obligations, including those regarding providing for and paying defense, settlement, indemnity, and other costs as incurred by ALPHA/ALLURE and by The Alpha/Allure Executives, as set forth herein, and for an Order compelling CHUBB to pay and reimburse ALPHA/ALLURE, and The Alpha/Allure Executives, all of its/their costs and payments, over and above the $1,000,000 payment already made by CHUBB under this Policy, and for CHUBB to pay the costs incurred by ALPHA/ALLURE and by The Alpha/Allure Executives in prosecuting this instant action, and for such other and further relief as may be allowed under New York law.

76. Accordingly, CHUBB is fully liable and responsible to pay and reimburse ALPHA/ALLURE and The Alpha/Allure Executives all of its/their costs and payments, over and above the $1,000,000 payment already made by CHUBB under this Policy, and for CHUBB to pay the costs incurred by ALPHA/ALLURE and by The Alpha/Allure Executives in prosecuting this instant action, and for such other and further relief as may be allowed under New York law.

**WHEREFORE**, Plaintiffs RIVINGTON, ALPHA/ALLURE and The Alpha/Allure Executives respectfully request this court to declare judgment, damages and remedies in favor of plaintiffs and as against defendants, both in equity and law, and award such damages and remedies as proved, and such costs and expenses and interest of this litigation as allowable.

Dated: March 13, 2019

          MARGULIES AND ASSOCIATES, PLLC

          */s/ Robert W. Margulies*
          ―――――――――――――――
          Robert W. Margulies (1846849)
          Attorney for Plaintiffs
          RIVINGTON, ALPHA/ALLURE,
          And The Alpha/Allure Executives
          170 Old Country Road, Suite 307
          Mineola, New York 11501
          Telephone: (212) 964-3400
          Fax: (212)732-4064
          Rmargulies@dandmlaw.com

To:

EXECUTIVE RISK INDEMNITY INC. / CHUBB
15 Mountain View Road,
Warren, New Jersey 07059

CHUBB
c/o North American Financial Lines Claims
82 Hopmeadow Street
Simsbury, CT 06070